UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

REINALDO ACOSTA,

    Plaintiff,

v.                                        Case No. 10-C-1111

DR. ELSA HORN-DOROIN, WILLIAM MCCREEDY,
DR. SCOTT HOFTIEZER, MICHAEL A. DITTMANN,
DR. WILLIAM KELLY, and ROBERT HUMPHREYS,

    Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 64), DISMISSING FORMER WARDENS MICHAEL A. DITTMANN AND ROBERT HUMPHREYS, SUBSTITUTING CURRENT WARDEN JOHN PAQUIN, AND SETTING A SCHEDULING CONFERENCE

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed on allegations that the defendants were deliberately indifferent to his chronic scrotal pain. Defendants' motion for summary judgment will be granted in part and denied in part for the reasons that are discussed below.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

Reinaldo Acosta is a Wisconsin state inmate who is confined at the Racine Correctional Institution, and was confined at the Kettle Moraine Correctional Institution (KMCI) previously. William McCreedy is employed by the Department of Corrections (DOC) as the Health Services Manager in the KMCI Health Services Unit; Elsa Horn-Doroin and William Kelley treated plaintiff while employed as KMCI physicians; Scott Hoftiezer is a DOC physician supervisor who functions as an associate medical director; and Michael Dittmann and Robert Humphreys are former KMCI wardens.

---

[1] These facts are drawn from plaintiff's verified, amended complaint (Doc. 33) as well as defendants' proposed findings of fact and plaintiff's response thereto (Doc. 77). Plaintiff's counsel submitted a proposed plaintiff's declaration (Doc. 75-3) which must be disregarded because it is undated and unsigned. Where defendants' proposed findings of fact conflict with plaintiff's verified, amended complaint in significant areas, the factual dispute is noted.

2

On November 22, 2007, while confined at KMCI, plaintiff was working in the prison's kitchen lifting 35-50 pound boxes when he felt a sharp pain to his groin area. He informed his supervisors, who contacted the prison's medical department. A prison nurse gave plaintiff Advil and muscle rub to control the pain. On November 27, 2007, Dr. Horn saw him for the first time. During that visit, plaintiff told Dr. Horn that his testicles were swollen and painful because he had been lifting heavy boxes and they hurt when pressure was applied to them. Dr. Horn noted that plaintiff's testicles were very tender and assessed either a groin pull or a hernia.[2] Moreover, Dr. Horn ordered an ultrasound, and started plaintiff on Vicodin and a muscle relaxant. She also ordered plaintiff a lower bunk, an extra pillow, and follow-up in a week.

On November 28, 2007, plaintiff underwent a scrotal ultrasound at St. Agnes Hospital, which indicated small bilateral hydroceles (fluid collection around the testicles) and a tiny left variocele (varicose vein). Dr. Horn saw plaintiff again on December 3, 2007, for continued groin pain, and reviewed his ultrasound report. She switched his pain medicine to ibuprofen and ordered an antibiotic along with light duty for one week. Dr. Horn assured plaintiff that his hydrocele would reduce and go away.

On January 11, 2008, Dr. Kelley saw plaintiff for ongoing testicular pain. Dr. Kelly suspected Epididymitis (swelling or inflamation of the epididymis, the tube that connects the testicle with the vas deferens) and ordered the antibiotic Clindamycin for ten days and ice.

---

[2] Plaintiff avers that Dr. Horn noted "definite hernia felt" (Doc. 33 at 3), but the medical progress notes in the record establish that she actually noted the opposite, "Ø definite hernia felt." (11/27/07 progress note, Doc. 69-1 at 60).

3

On January 25, 2008, Dr. Kelly saw plaintiff in response to his continued complaints of pain and prescribed Ibuprofen. This was followed by a February 28, 2008, appointment when Dr. Kelly noted the presence of bilateral Epididymitis, swollenness, and tenderness. At that time, Dr. Kelley ordered that plaintiff resume the antibiotic Clindamycin for two weeks. On April 7, 2008, and August 11, 2008, without seeing plaintiff, Dr. Horn ordered a refill of Ibuprofen.

Plaintiff submitted a Health Services Request (HSR) on September 11, 2008, stating that his swollen testicles were causing so much pain that he couldn't think or walk. A nurse saw him the following day and recorded his vital signs. On September 21, 2008, plaintiff submitted another slip complaining that the pain prevented him from sleeping and asking that the fluid be withdrawn to reduce his pain. After plaintiff complained to Dr. Horn on September 23, 2008, of burning when urinating along with groin pain, she wrote orders for a scrotal supporter and three weeks of the antibiotic Doxycycline.

Dr. Horn reviewed plaintiff's medical chart on October 28, 2008, regarding his scrotal problems and wrote an order for a second opinion with Dr. Kelly. The next day, Dr. Kelly ordered discontinuation of the scrotal support as it was not relieving plaintiff's scrotal pain, and a large athletic supporter was ordered.

On January 28, 2009, plaintiff submitted an HSR slip explaining that he needed to see the doctor because his testicles were swollen and it was difficult to sleep. The following day, Dr. Kelly ordered three weeks of the antibiotic Doxycycline.

Plaintiff submitted an additional HSR slip with complaints of continued pain on May 18, 2009, stating that he could not sleep due to the pain and that he had blood in his urine. The following day, May 19, 2009, without seeing plaintiff, Dr. Horn directed a nurse to

4

inform plaintiff that testing did not disclose blood in his urine and that he needed to increase his fluids. On May 20, 2009, Dr. Horn found upon examination that plaintiff's left scrotum was enlarged 3X and the left epididymis was very tender to touch. She ordered a resumption of the antibiotic Doxycycline, a scrotum ultrasound, and a six-week follow-up. Dr. Kelly saw plaintiff again regarding his complaint of a swollen testicle, and issued a ten day work restriction, ten days of Ibuprofen and an ice bag. Also on May 27, 2009, plaintiff went to St. Agnes Hospital for a scrotum ultrasound and was seen by urologist James Wright, M.D.

At Dr. Horn's request, Dr. Wright and Dr. Kelley spoke. Dr. Kelley was informed that conservative management was appropriate for plaintiff's left testicle, and that plaintiff may need to have his testicle removed. Dr. Kelly examined plaintiff the same day and plaintiff said his left testicle was tender. A follow-up appointment with Dr. Wright in one week was planned. On June 3, 2009, Dr. Wright telephoned Dr. Horn after he saw plaintiff at his clinic. Dr. Wright wanted plaintiff to be referred to the University of Wisconsin Infectious Disease Clinic, and Dr. Horn promptly wrote a referral. On June 8, 2009, plaintiff was seen by UW Infectious Disease and UW Urology. Recommendations were made for additional antibiotics and additional testing prior to follow-up with the urology department.

On July 1, 2009, Dr. Horn's examination showed that plaintiff's scrotum remained swollen and tender, and ordered continuing antibiotics and light duty. Plaintiff submitted HSR slips complaining of extreme pain on July 12, 2009, and July 14, 2009. On July 13, 2009, he was seen by a KMCI nurse who denied him medical treatment, stating that "they should cut-off your balls, so that you wouldn't be in pain anymore." The next day, Dr. Kelly

5

examined plaintiff and found that more fluid was present in the scrotum and the hydrocele in the left testicle was enlarged and tender. Dr. Kelly ordered an ultrasound of the testicle.

On August 4, 2009, an ultrasound of plaintiff's testicle disclosed a moderate-sized left hydrocele and a small to moderate right hydrocele. Plaintiff submitted an HSR slip on August 10, 2009, explaining that his pain was at 10 on a scale of 1-10, and that he needed to see a doctor immediately. Plaintiff was again ridiculed by a KMCI nurse on August 11, 2009. He submitted a HSR slip on August 29, 2009, explaining that his swollen testicle was very painful, that Motrin was not relieving the pain, and asking that the fluid be drained.

On September 11, 2009, plaintiff was seen by UW Urologist Dr. Patel, who suggested a hydrocelectomy. Plaintiff wished to proceed with the surgery despite the risk that it might increase his pain or pose other risks. Dr. Horn completed a Class III prior authorization for the procedure on September 14, 2009. This process is required by the DOC for approval of surgery that is not urgent or emergent.

On September 15, 2009, Dr. Horn presented at the Class III committee with Dr. Hoftiezer, but the surgery was not approved. Two days later, plaintiff filed an inmate complaint regarding the denial of the surgery and over the next several months exhausted his administrative remedies.

On March 5, 2010, Health Services Manager William McCreedy assisted in responding to a letter written by plaintiff to former Governor James Doyle. William McCreedy also responded to a letter from Senator Lena Taylor regarding her correspondence from plaintiff.

6

On December 3, 2010, Dr. Kelly saw plaintiff for complaints of left testicular pain. Plaintiff had more hydrocele effect on the left testicle and his stomach was upset because he had been taking Ibuprofen. As a consequence, Dr. Kelly discontinued the Ibuprofen and started plaintiff on Gabapentin, another pain reliever, for three months.

As of March 23, 2011, plaintiff remained in severe pain and believed that he was at risk for losing a testicle and his ability to procreate. After plaintiff filed this lawsuit, the court held a hearing on December 29, 2010, and the plaintiff's understanding was that he would receive the surgery. However, the surgery was again denied. On January 11, 2011, Dr. Hoftiezer provided an affidavit stating that "part of the testicle may have died" and that plaintiff would be seen by the urologist again. (Doc. 21). When plaintiff saw the urologist on February 18, 2011, the urologist stated that he had not seen plaintiff for over two years, that plaintiff's testicle had died, and that he would like to do the surgery. However, the urologist then received a phone call from Dr. Kelly stating that the prison wanted to just shoot the nerve to relieve pain, rather than to do the surgery. Plaintiff underwent microsurgery deneration of the spermatic cord at UW Urology on May 12, 2011.

ANALYSIS

The Eighth Amendment's prohibition of cruel and unusual punishment forbids deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To establish liability a prisoner must demonstrate an objectively serious medical condition, and an official's deliberate indifference to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). A medical condition is objectively serious if a physician has determined that treatment is mandated, or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 584-85 (quoting

*Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). A prison official is deliberately indifferent if he knows of a substantial risk of harm and disregards that risk. *Edwards v. Snyder*, 478 F.2d 827, 831 (7th Cir. 2007).

### Defendants Dr. Horn and Dr. Kelly

In support of summary judgment, defendants Dr. Horn and Dr. Kelly maintain that they did not act with deliberate indifference tp plaintiff's medical needs because they examined him repeatedly, attempted to treat him with medications, referred him to specialists, and monitored his condition. The facts set forth above demonstrate clearly that neither doctor ignored plaintiff. However, a reasonable jury could conclude that both doctors "persist[ed] in ineffective treatment" for several years and thereby demonstrated deliberate indifference to plaintiff's need for medical care. *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). Thus, summary judgment may not be granted on this claim.

### Defendants Dr. Hoftiezer and McCreedy

Dr. Hoftiezer maintains that his participation in the decision not to approve a hydrocelectomy on September 14, 2009, does not rise to the level of deliberate indifference because the surgery was not medically necessary, and he later authorized the May 12, 2011, microsurgical denervation of plaintiff's spermatic cord. KMCI Health Services Unit Manager McCreedy offers that he is entitled to summary judgment because he is a supervisor who did not provide direct treatment to plaintiff. While antibiotics, mild pain relievers, ice packs, rest, and scrotal supports may have been reasonable first attempts at relieving plaintiff's pain, the years that elapsed while plaintiff complained continually of significant scrotal swelling and intense pain, might well suggest to a jury that all of the medical defendants involved with plaintiff's care at KMCI acted with deliberate

8

indifference in failing to provide effective medical care. *Cotts v. Osafo*, __ F.3d __ *5, 2012 WL 3240667 (7th Cir. 2012). ("A reasonable jury could have believed evidence suggesting that for almost three years, the defendants refused to repair Cott's hernia surgically because they followed an inflexible policy against surgery for reducible hernias. They might have also believed that because Wexford would have to pay for any surgery impacted the decision not to allow it. In short, a factfinder could have reasonably concluded that the defendants 'substantially departed from professional judgment by refusing to authorize surgical repair for [Cott's] painful hernia.'") (quoting *Gonzalez*, 663 F.3d at 314).

### Defendants Michael Dittmann and Robert Humphreys

Former KMCI wardens Michael Dittmann and Robert Humphreys assert that they are entitled to dismissal because they properly deferred to the medical professionals on issues of plaintiff's medical care. The Seventh Circuit has held that "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). This general rule applies here, as plaintiff was under the care of multiple doctors at the time Dittmann and Humphreys served as warden. Accordingly, both former wardens will be dismissed because no claim is stated against them in their individual capacity and they are no longer proper defendants in their official capacity. However, because plaintiff seeks injunctive relief as well as damages, the warden of the Racine Correctional Institution, where plaintiff is currently confined, is now a proper defendant. *Gonzalez*, 663 F.3d at 315 ("Though Gonzalez does not allege any specific involvement by Gaetz in the treatment of his hernia, the warden of Menard is a proper defendant since

9

Gonzalez seeks injunctive relief. Gaetz is no longer the warden, however, so we substitute current Warden Dave Rednour as defendant because he would be responsible for ensuring that any injunctive relief is carried out."). Therefore,

IT IS ORDERED that defendants' motion for summary judgment (Doc. 64) is DENIED in part and GRANTED in part, as discussed herein.

IT IS FURTHER ORDERED that defendants Michael Dittmann and Robert Humphreys be DISMISSED from this action and that Racine Correctional Institution Warden John Paquin be substituted in their place, in his official capacity, for purposes of potential injunctive relief.

IT IS FURTHER ORDERED that a scheduling conference be held at 2:00 PM on October 29, 2012, in Courtroom 222, 517 E. Wisconsin Avenue, Milwaukee, WI.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge